UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                           CASE NO. 07-11319

IRBY FITCH                                       SECTION A
BRITTANY FITCH
    Debtors                                      CHAPTER 13

### MEMORANDUM OPINION

On September 5, 2007, Irby and Brittany Fitch ("Debtors") filed an Objection to Claim against Wells Fargo Home Mortgage, Inc., d/b/a America's Servicing Company as servicing agent for EMC ("Wells Fargo"). The Objection requested a full history of Debtors' mortgage loan and support for certain charges or fees claimed by Wells Fargo in its proof of claim. Specifically, Debtors requested documentation to support Wells Fargo's claim for broker's price opinion charges, inspection fees, foreclosure fees and costs, as well as all amounts due under Debtors' escrow account. The Objection was served on Wells Fargo on September 5, 2007, and was accompanied by a qualified written request delivered to Wells Fargo under the Real Estate Settlement Procedures Act ("RESPA").

An initial hearing on this matter was conducted on October 9, 2007. Debtors stipulated that the amounts claimed for foreclosure costs and attorney's fees were correct. Because Wells Fargo failed to produce documentation to support the broker's price opinions and property inspection charges, they were disallowed. The next issue for consideration involved the past due amounts claimed for escrow.

Wells Fargo's proof of claim, filed on August 3, 2007, listed a past due escrow balance of $2,065.80. To its initial Response filed on September 28, 2007, Wells Fargo attached a partial accounting for escrow that showed a negative escrow balance of $3,078.20. Wells Fargo's Response

-1-

also revealed $2,988.88 in "Available Escrow Deposits," but claimed an additional $1,976.48 in sums "needed for ongoing disbursements." Although both the credit and deduction were listed in Wells Fargo's Response, Wells Fargo never produced evidence, nor could it explain how these amounts were calculated. Wells Fargo also failed to explain whether or not the escrow portion of past due installment payments included in the proof of claim had been credited to Debtors' past due escrow balance. Finally, only a partial accounting for escrow was supplied and did not reflect the account's entire history, nor did it reveal the history of Debtors' loan. As a result, the Court declared the escrow account current, striking all past due sums.

Having ruled on the itemized charges contained in Wells Fargo's proof of claim, the Court turned its attention to Debtors' challenge of the entire balance. Because Wells Fargo had not produced a satisfactory accounting of Debtors' loan history and had yet to completely respond to Debtors' RESPA request, the Court continued the hearing pending the delivery of additional information from Wells Fargo. The continued hearing was held on November 27, 2008, at which time the Court directed Wells Fargo to provide a prepetition payment history on or before November 30, 2007.

The next hearing was held on January 8, 2008, after Debtors had time to review the payment history and documentation supplied by Wells Fargo. The documentation, however, was still incomplete and the Court ordered the production of the following: inspection/broker's price opinion reports and invoices showing what Wells Fargo paid for these services; a copy of Wells Fargo's private mortgage insurance policy; additional detail regarding the force-placed insurance policy; the servicing agreements; additional information regarding the life insurance premiums charged to Debtors; and copies of the prospectus supplement and SEC form 424B5. The Court continued the

hearing to provide Wells Fargo additional time to supply the required documents.

By the final hearing on February 13, 2008, Wells Fargo had satisfied the qualified written request, although it did so well after the time limit set by RESPA.

<u>Request for Sanctions</u>

After the receipt of the full loan history on November 30, 2007, Debtors did not assert any additional challenges to the amounts owed. Instead, Debtors are seeking sanctions and damages for Wells Fargo's failure to timely provide the information requested under RESPA.

The purpose of RESPA is "to protect home buyers from material non-disclosures in settlement statements and abusive practices in the settlement process. RESPA applies not only to the actual settlement process, however, but also to the servicing of federally regulated mortgage loans."[1] RESPA details the procedure for borrowers to obtain information regarding their loan. The information must be sought through a qualified written request, which then imposes a duty upon the loan servicer to respond. A qualified written request is written correspondence that lists reasons why a borrower believes the account is in error or requests other information.[2] Once a qualified written request is delivered to a servicer, two obligations are created. The first is to acknowledge receipt of the request within 20 days.[3] The second obligation is to take one of three actions within 60 days: 1) make appropriate corrections to the account of the borrower; 2) provide the borrower with a written explanation as to why the servicer believes the account is correct; or 3) provide the borrower with the requested information or a written explanation of why the requested information is

---

[1] *In re Thompson*, 350 B.R. 842, 851 (Bankr. E.D.Wis. 2006), *quoting*, *MorEquity, Inc. v. Naeem*, 118 F.Supp.2d 885, 900 (N.D.Ill. 2000).

[2] 12 U.S.C. § 2605(e)(1)(B).

[3] 12 U.S.C. § 2605(e)(1)(A).

unavailable and cannot be obtained.[4]  RESPA further provides that a servicer shall be liable to the borrower for actual damages, plus a maximum of $1,000.00 in additional damages should a pattern of noncompliance be proven, for failure to comply with the qualified written request.[5]  Debtors served Wells Fargo with a qualified written request under RESPA on or about September 5, 2007.

Wells Fargo supplied copies of invoices for attorneys fees and costs as well as an accounting of the escrow account from September 29, 2004, to July 1, 2007, but failed to produce copies of inspection reports and broker's price opinions on a timely basis.  It provided a full loan history to Debtors' counsel on November 30, 2007, after receiving an extension from the Court until that date. Wells Fargo's claims with regard to the escrow account were not revised based on the information presented to the Court and no explanation as to the conflicting information provided was made.

As previously stated, the Court struck Wells Fargo's claims for broker's price opinion charges, inspection fees, and the negative escrow because it failed to produce, on a timely basis, evidence of the propriety of the charges.  In order to determine if sanctions are appropriate, the Court has reviewed the loan history supplied by Wells Fargo in an effort to ascertain the correct amounts owed.  By calculating the prepetition arrearage owed by Debtors and comparing it to the amounts set forth on the proof of claim, the Court may or may not conclude that Wells Fargo's actions were sanctionable.

Escrow

By far, the largest problem with Wells Fargo's proof of claim appears to be the conflicting information it supplied on the calculation of Debtors' past due escrow balance.  Initially, Wells

---

[4] 12 U.S.C. § 2605(e)(2)(A) - (C).

[5] 12 U.S.C. § 2605(f)(1).

Fargo claimed $2,065.80 in past due escrow payments on its proof of claim.  It did not reveal the existence of funds in a debtor suspense account that evidently existed on the petition date, nor did it clarify whether the escrow portion of past due installment payments also claimed on the proof of claim had been credited to the balance owed.  After the Objection was filed, Wells Fargo provided a partial history of Debtors' escrow account indicating a negative escrow balance of $3,078.82 on the petition date.  This sum did not match the proof of claim balance.  However, within its Response, Wells Fargo reconciled the two by explaining the existence of a debtor suspense account and claiming additional charges for "future disbursements."  Wells Fargo still failed to explain what "future disbursements" might be required or how Debtors' suspense account balance was calculated. It also failed to acknowledge credits due for escrow installment amounts already claimed with past due monthly notes on the proof of claim.

Two months later, Wells Fargo filed a full loan history which revealed a negative escrow balance of $4,154.20.  This new balance was prior to the application of Debtors' suspense account, credits for the escrow portion of past due installment also claimed on the proof of claim, or debts for any additional "needed funds for future disbursement."  It provided no explanation as to why this accounting differed from the previous filings.

Both histories indicate that three charges are paid annually from Debtor's account: property taxes, flood insurance premiums, and hazard insurance premiums.  Below is a chart, prepared by the Court, reflecting the last charge paid by Wells Fargo for each of these expenses, the date paid, and the period of coverage.

| Date paid | Description | Amount paid | Period covered |
|-----------|-------------|-------------|----------------|
| 12/12/06 | Property tax | $106.04 | 1/1/07-12/31/07 |
| 02/07/07 | Flood Ins | $1,133.06 | 10/21/06-10/21/07 |

| 06/15/07 | Hazard Ins | $896.14 | 6/15/07-6/15/08 |
| 06/25/07 | Refund-hazard | (-$378.82) | |

Based on this information, the Court can estimate the amounts necessary to balance Debtors' escrow account:

| Type | Annual Amt | Mo.Amt | Mos to | Petition date | Total due |
|------|-----------|--------|--------|---------------|-----------|
| Property tax | $106.04 | $ 8.84 | 7 mos | 1/07-7/07 | $ 61.88 |
| Flood Ins | $1,133.06 | 94.42 | 10 mos | 10/06-7/07 | 944.20 |
| Hazard | $517.32 | 43.11 | 2 mos | 6/07-7/07 | 86.22 |
| Total due to balance account as of petition date | | | | | $1,092.30 |

To this sum must be added two months worth of escrow payments allowed by RESPA, or $48.80.[6]

Thus, the total amount to bring the escrow account into balance as of the petition date is:

$4,154.20- Actual past due balance on the petition date
1,092.30- Additional amounts needed to bring the account current
48.80- RESPA allowed cushion
$5,295.30[7] Total past due sum

This would have been the correct amount to reflect on the proof of claim. It was not, nor was it the sum presented in Wells Fargo's Response or after the submission of the full loan history. Instead, Wells Fargo's calculation resulted in substantial overstatement of the amounts owed.[8] Since this has

---

[6] ($106.04 + $1,133.06 + $517.32) / 12 = $24.40 x 2 = $48.80

[7] $1,141.10 ($1,090.30 + $48.80) is Debtors' new starting postpetition escrow balance to which $146.37 will be added each month, postpetition, until readjusted if necessary.

[8] Based on the calculations contained within Wells Fargo's proof of claim and Response, the escrow balance would have been (-$836.54). This balance is calculated:

$  836.54 -actual past due balance on petition date
- 2988.88 - Debtors' suspense account balance on petition date
+ 2241.66 - 6 mos of past due escrow payments @ $373.61 each
+ 1976.48 - amounts allegedly needed for future disbursements
$ 2065.80 - owed per proof of claim

However, according to Wells Fargo's accounting, the balance due on the petition date was either (-$3,078.82) or (-$4,154.20) *before* application of Debtors' suspense balance or credits for the escrow portion of past due installment payments or the addition of amounts needed for future disbursements.

-6-

been a common problem in this and other cases, the Court sets the following parameters for the calculation of amounts due as of the petition date for escrow and reflected on proofs of claim.

First, the debtor's actual escrow balance as of the petition date is to be listed on the proof of claim. Lenders are then required to list the last year's property tax payment and premiums for all related insurance, as well as the date of last payment made on each account. Each amount should then be divided by 12 and multiplied by the number of months between the date of last payment and the petition date. The sum of these amounts, plus two months worth of escrow payments as allowed by RESPA (collectively referred to as the "Catch Up Escrow Payments"), should then be subtracted from the actual escrow balance existing on the petition date. If the difference is a negative number, this amount should be reflected on the proof of claim as a past due sum. If the difference is a positive number, it should be a credit against other sums owed.

The calculations explained above should appear on the face of the proof of claim:

| Escrow charges | Amount | Date paid | Mo amt | Mos to petition date | Total due |
|---|---|---|---|---|---|
| Hazard Ins | $A | X/X/XX | A/12=M | X/X/XX-Petition date=N | M*N |
| Flood Ins | $B | X/X/XX | B/12=O | X/X/XX-petition date=P | O*P |
| Taxes | $C | X/X/XX | C/12=Q | X/X/XX-Petition date=R | Q*R |
| Total | | | S | | T |

The two (2) months worth of escrow payments allowed under RESPA are calculated: $[(A + B + C)/ 12] \times 2 = U$

$U + T$ = Catch Up Escrow Payments

The actual escrow balance on petition date minus the Catch Up Escrow Payments $(U + T)$ = escrow balance on proof of claim

The debtor's postpetition escrow account should begin with a balance equal to the Catch Up Escrow Payments $(U + T)$.

$S$ = new monthly postpetition escrow payment added to postpetition installments of principal and

-7-

interest

Because the escrow account is now balanced, past due installments should be listed on the proof of claim with only interest and principal components.  Any amounts held in debtor's suspense should be separately listed as a credit.  All other outstanding fees, costs, and charges should be separately listed.

The Calculation of the Arrearage

Wells Fargo's accounting reflected a positive suspense balance of $2,685.55.  Monies held in suspense at the time of filing are due as a credit against the amounts owed on the petition date.

Prepetition attorney's fees and costs have been stipulated by Debtors to be $2,410.12.

Because the amount to balance the escrow account is separately calculated, the past due installments should only include principal and interest.  Therefore, Debtors owe payments of $661.20 each month from February, 2007, through July, 2007, or $3,967.20 in total.

The revised prepetition escrow account balance is $5,295.50. Wells Fargo is authorized to offset Debtors' suspense balance, $2,685.30, against this amount despite the Court's prior ruling striking the past due escrow account.

The total amounts due as of the petition date are:

| | |
|---|---|
| Past due installments-2/07-7/07, principal and interest only | $ 3,967.20 |
| Attorneys fees and costs | 2,410.12 |
| Late fees | 165.30 |
| Total | $6,542.62[9] |

---

[9]  Based on prior rulings, the $2,610.00 in outstanding escrow charges have been stricken.

The Court believes Well Fargo has attempted to implement its decision in *Jones*[10] with this proof of claim and the lessons learned from the trial in *Stewart*.[11]  While the proof of claim filed in this case was still in substantial error, the problems with the accounting supplied by Wells Fargo are minute compared with previous cases. For the record, the Court has already stricken the past due escrow account, inspection fees, and broker's price opinion charges because Wells Fargo failed to provide proof of those amounts during trial. After the entire accounting was reconciled, this resulted in a reduction of $2,990.00 in Debtors' favor. [12]

The Court notes that Wells Fargo did present erroneous information on the profits charged for  broker's price opinions in this case, but corrected the evidence when the truth came to light. While the Court does not condone Wells Fargo's action, Wells Fargo was sanctioned in *Stewart*[13] for this practice. With regard to the delays experienced by Debtors for the production of information, the Court does not find that the delays were so lengthy as to warrant sanctions.

Having found these failings, the Court also notes that Wells Fargo has produced a legible and presumably correct accounting of the loan's payment history based on Debtors' failure to object to any additional entries.  It also appears that payments are being properly applied both to pre and postpetition sums.  In short, the accounting supplied is a vast improvement over that delivered in *Jones* and *Stewart*.

---

[10] *In re Jones*, 366 B.R. 584 (Bankr. E.D.La. 2007), *supplemented by*, 2007 WL 2480494 (Bankr. E.D.La. 2007).

[11] *In re Stewart*, No. 07-11113 (Bankr. E.D.La. April 10, 2008).

[12]  The elimination of broker's price opinion charges, inspection fees and negative escrow balance reduced Wells Fargo's claim by $2,990.00.

[13] *In re Stewart*, No. 07-11113 (Bankr. E.D.La. April 10, 2008).

Damages

Wells Fargo did not fully comply with Debtor's qualified written request until January 18, 2008. RESPA provides that Wells Fargo shall be liable for actual damages, plus an additional $1,000.00, should a pattern of noncompliance be proven.  Debtors have requested $21,850.00 in attorneys' fees, which they claim are their actual damages.

In *Johnson v. Georgia Highway Exp., Inc.*,[14] the Fifth Circuit set forth twelve factors that courts should consider when evaluating a fee request.  This Court will now consider Debtors' fee request, using the relevant *Johnson* factors for guidance.

This Court has relied heavily upon the comparison of the effort expended in this matter with that expended in *Stewart* because the debtors in both cases were represented by the same firm.  The issues presented in each case were similar, but the complexity of the accountings offered and the time expended in trial was substantially less in this matter.  The documentation and accounting work produced by Wells Fargo were also substantially improved.  The Court does not believe that the fees requested for this matter, $21,850.00, are commensurate with the effort and results obtained, given that counsel charged $12,500.00 in the *Stewart* case for a considerably more involved and complex matter.

The Court also notes that the fees charged are seven times the benefit received by Debtor. Debtors' counsel billed 109.25 attorney hours at $200.00 per hour.  The Court finds that the amount of time that counsel spent on this case is excessive for a number of reasons.  First, Eastern District of Louisiana Bankruptcy Court General Order No. 2007-2, and the accompanying Reasons, provide that routine claim objections and work related to confirmation are included in the "no-look' fixed fee

---

[14] 488 F.2d 714, 717-719 (5th Cir. 1974).

counsel receives for representing debtors in chapter 13 bankruptcies. While this claim objection was not routine, the initial work of reviewing Wells Fargo's claim, discussing it with Debtors, and preparing for and attending confirmation hearings fall within the parameters of the "no-look" fee and are not appropriately charged to this matter. Additionally, counsel spent an inexplicable amount of time reviewing pleadings. For example, counsel spent 1.1 hours reviewing a one page Motion to Continue with a one page attachment.[15]

Counsel also spent a disproportionate amount of time preparing for hearings. The initial benefits obtained were achieved in the first hearing, which lasted only thirteen (13) minutes. Subsequent hearings were conducted almost exclusively to compel document production.

While the novelty and difficulty of the questions presented and the skill requisite to perform the legal service involved weigh in favor of a higher fee, the Court does not believe that they justify the fee requested. The remaining *Johnson* factors: the customary fee charged, the "undesireablility" of the case, and the nature and length of the professional relationship with the client,[16] are inapplicable.

---

[15] October 17, 2007, entry on Affidavit of Debtors' Counsel as to Attorney Fees, P-38, referring to October 17, 2007, Motion to Continue Hearing, P-19.

[16] *Johnson*, 488 F.2d at 718-719.

For the above reasons, the Court does not find the $21,850.00 fee request to be reasonable and awards $3,500.00 in fees.    The Court also finds that Debtors have not shown a pattern of noncompliance, nor did they prove that additional damages were warranted.    Accordingly, the Court will not award any additional damages.    Provided Wells Fargo complies with this Memorandum Opinion and the directives in *Stewart* and *Jones*, the Court hopes that further sanctions will not be necessary.

New Orleans, Louisiana, April 17, 2008.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge